# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 12-3511-GW(AGRx) | Date | October 4, 2012 |
|---|---|---|---|
| Title | *Mahin Oskoui v. JPMorgan Chase Bank, et al.,* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | | |
|---|---|---|---|
| Kane Tien | Wil Wilcox | | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. | |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: | | |
| Mahin Oskoui, *pro se* | Christina Goebelsmann | | |

**PROCEEDINGS:** **DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT (filed 08/28/12)**

Court hears oral argument. The Tentative circulated and attached hereto, is adopted as the Court's final ruling. The Court **GRANTS IN PART/DENIES IN PART** defendants' motion to dismiss, for reasons stated on the tentative, and on the record.

| | : | 11 |
|---|---|---|
| | Initials of Preparer | KTI |

<u>***Oskoui v. JPMorgan Chase Bank, N.A., et al.***</u>, Case No. 12-cv-03511-GW-(RZx)
Tentative Ruling on Motion to Dismiss Plaintiff's First Amended Complaint

Mahin Oskoui ("Plaintiff") filed a First Amended Complaint ("FAC") in this action on August 10, 2012. *See* Docket No. 18. Although the FAC is only the second version of the complaint filed in this action, Plaintiff previously filed another lawsuit against the defendants, which this Court dismissed with leave to amend, but which Plaintiff voluntarily dismissed instead of amending.[1] Defendants JPMorgan Chase Bank, N.A. ("Chase") and U.S. Bank, National Association as Trustee, Successor in Interest to Bank of America, National Association as Successor by Merger to LaSalle Bank NA as Trustee for WAMU Pass-Through Certificates Series 2007-HY06 Trust ("U.S. Bank" and, together with Chase, "Defendants") now move to dismiss. Plaintiff opposed the motion on September 13, 2012, and then filed a request for judicial notice of a document titled "Foreclosure in California: A Crisis of Compliance" on September 24, 2012.[2]

Under Rule 12(b)(6), a court must (1) construe the complaint in the light most favorable to the plaintiff, and (2) accept all well-pleaded factual allegations as true, as well as all reasonable inferences to be drawn from them. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001); *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998). The Court need not accept as true "legal conclusions merely because they are cast in the form of factual allegations." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003). In its consideration of the motion, the Court is limited to the allegations on the face of the complaint (including documents attached thereto), matters which are properly judicially noticeable and "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *See Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001); *Branch v. Tunnell*, 14 F.3d 449, 453-54 (9th Cir. 1994), *overruling on other grounds recognized in Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

---

[1] *See Oskoui v. JPMorgan Chase Bank*, CV 12-00434 GW (AGRx).

[2] The Court can judicially notice that the document exists, but beyond that, insofar as Plaintiff has not identified what, in particular, about that document she wants the Court to consider, the request for judicial notice would be denied.

1

Dismissal pursuant to Rule 12(b)(6) is proper only where there is either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990); *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121-22 (9th Cir. 2008); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561-63 (2007) (dismissal for failure to state a claim does not require the appearance, beyond a doubt, that the plaintiff can prove "no set of facts" in support of its claim that would entitle it to relief). However, a plaintiff must also "plead 'enough facts to state a claim to relief that is plausible on its face.'" *Johnson*, 534 F.3d at 1122 (quoting *Twombly*, 550 U.S. at 570); *see also William O. Gilley Enters., Inc. v. Atlantic Richfield Co.*, 588 F.3d 659, 667 (9th Cir. 2009) (confirming that *Twombly* pleading requirements "apply in all civil cases").

One of the principal arguments Defendants raise in their motion is that it is somewhat difficult to discern just what claims Plaintiff, a *pro per* litigant, advances here in the FAC. At base, from the recitation of the background facts, it is apparent that Plaintiff (perhaps understandably) is, to put it mildly, displeased with Defendants and other banking institutions in this country due to the mortgage-and-foreclosure-related financial meltdown that has occurred over the past several years. While not a model pleading, Plaintiff depicts a not-unsympathetic state of affairs from which the Court can discern at least several possible claims for relief, even if somewhat inartfully pled. A summary of what would appear to the Court to be the key aspects of Plaintiff's allegations follows first.

Plaintiff asserts that Defendants presented a trial payment plan as a way for Plaintiff to qualify for consideration of a modification of her loan, effectively implying a willingness to suspend Chase's right to foreclose. *See* FAC at 3:102-4:105.[3] Plaintiff therefore makes the claim that "[o]nce an offer of [the trial payment plan] was made to Plaintiff, Chase entered into a contract which was binding, superseding and implicitly having the effect of suspending the default condition that had existed between Plaintiff…and Defendants…prior to the [trial payment plan] agreement." *Id.* at 4:105-

---

[3] The FAC numbers each line consecutively from 1 through 681.

2

109.[4] Plaintiff asserts that she met all of her obligations under two different trial payment plans. *See id.* at 4:110-122, 4:131-134, 5:171-178. Neverthe-less, she alleges that Chase proceeded with foreclosure-related activities. *See id.* at 5:161-165, 5:176-181. Moreover, after the two trial-payment-plan-periods, Defendants told Plaintiff that she did not qualify for a modification under the Home Affordable Modification Program "because her outstanding loan amount was more than the qualifying loan amount ceiling for HAMP," information which Plaintiff believes it is "completely inconceivable" that Chase did not know "from the very outset," before it extracted payments from Plaintiff under the two trial payment plans. *Id.* at 10:360-365.

Plaintiff indicates that she eventually stopped pursuing a modification and stopped making payments to Chase because of Chase's "repeated changes of position and repeated threats of foreclosure and offers of modification loan [*sic*] at the same time, despite receiving every cooperation and effort that had been required of Plaintiff." *Id.* at 6:189-192; *see also id.* at 6:198-201. The foreclosure sale eventually occurred on September 28, 2011. *See id.* at 12:447-48, 13:452-53. Plaintiff also asserts her belief that the property in question "still belongs to her, since the Deed of Trust was cancelled and was no longer valid for transfers at the time of the foreclosure sale." *Id.* at 12:431-433.

Plaintiff bolsters the account of her own interactions with Defendants by way of reference to other litigation raising similar allegations. *See, e.g., id.* at 6:201-212, 6:220-7:280.

Although Defendants express some uncertainty concerning the nature of Plaintiff's claims, she expressly includes a claim for unfair business practices, which the Court presumes (and Defendants have presumed) refers to a claim under California Business and Professions Code § 17200. The Court can conceive of Plaintiff's allegations satisfying both the "fraudulent" and "unfair" prongs of a section 17200 claim.[5] If what Plaintiff alleges is true – that Chase's left hand sought payments from

---

[4] Plaintiff relies, at least in part, on the letter attached as Exhibit A to the FAC (and to Plaintiff's Opposition brief), which she quotes as providing that "[a]fter successful completion of the Trial Period Plan, Chase will send you a modification agreement for your signature which will modify the loan as necessary to reflect this new payment amount." *Id.* at 6:213-217; Exh. A at 1.

[5] The Ninth Circuit has specifically refrained from requiring that claims under the "unfair" prong of section 17200 be "tethered to some legislatively declared policy" in consumer-brought section 17200 cases. *See Davis v. HSBC Bank Nev., N.A.,* \_\_ F.3d \_\_, 2012 U.S. App. LEXIS 18503, *39-40 (9th Cir. Aug. 31,

Plaintiff pursuant to a plan designed to give her an opportunity to modify her loan while, notwithstanding Plaintiff's payment in accordance with that plan, Chase's right hand continued all along with foreclosure proceedings and *both hands* should have known from the start that Plaintiff's loan would not be eligible for modification in any event – the Court can conceive of such allegations stating a section 17200 claim. *See Davis v. HSBC Bank Nev., N.A.*, __ F.3d __, 2012 U.S. App. LEXIS 18503, *37 (9th Cir. Aug. 31, 2012) ("A business practice is fraudulent under the UCL if members of the public are likely to be deceived."); *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 735 (9th Cir. 2007) (applying balancing test from *South Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal.App.4th 861 (1999), which involves "balancing the harm to the consumer against the utility of the defendant's practice"). To the extent Defendants seek to dismiss that claim, therefore, the Court would deny the motion.

Plaintiff also asserts a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"). In support of that claim, she alleges in part:

> that Defendants conspired and colluded to mislead Plaintiff and extort money from her by failing to reveal their true intention to foreclose, despite producing documents which appear to offer a way out of foreclosure, and which are unidentified because of missing names and/or signatures which are therefore invalid and, also making fraudulent statements and entering into a contract they had no intention of honoring.

FAC at 16:576-82. She alleges that Chase and U.S. Bank "colluded and conspired to relieve the Plaintiff of her property, under subterfuge, deceit and fraudulent misrepresentations to Plaintiff and through a suspiciously speedy acceptance by U.S. Bank of Plaintiff's property rights as the new Trustee, without adequate time or notice for Plaintiff to intervene or properly challenge the foreclosure sale." *Id.* at 16:589-93. "To state a civil claim for a RICO violation under 18 U.S.C. § 1962(c), a plaintiff must show "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Rezner v. Bayerische Hypo-Und Vereinsbank AG*, 630 F.3d 866, 873 (9th Cir. 2010), *cert. denied*, 132 S.Ct. 115 (2011). "A 'pattern of racketeering activity' requires at least two predicate acts of racketeering activity, as defined in 18 U.S.C. § 1961(1), within a period of ten years." *Canyon Cnty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 972 (9th Cir.

2012); *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 736 (9th Cir. 2007); *Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 994 (9th Cir. 2000).

2008). Defendants question what the facts are supporting the pattern allegation, the enterprise allegation and the predicate acts requirement.

A single corporation can be an "enterprise" under RICO. *See Odom v. Microsoft Corp.*, 486 F.3d 541, 548 (9th Cir. 2007). With support from similar allegations in similar cases, Plaintiff has also identified the "pattern" Chase undertakes. While she has advanced a separate claim of "mail fraud," the Court can discern that allegation as the "predicate acts" basis for Plaintiff's RICO claim[6]. Plaintiff alleges that Chase has used the United States mail to indicate to Plaintiff (and other homeowners) a prospect for a loan modification where that prospect did not exist in the first place and Chase took steps towards foreclosure simultaneously. The incipient elements of Plaintiff's civil RICO claim are there, and none of the arguments Defendants have presented thus far convincingly demonstrate that the claim should be dismissed on the pleadings.

Plaintiff also appears to offer a claim headed "Cancelled Deed of Trust is invalid and non-transferrable." FAC at 17:625. The entirety of the allegations supporting that claim is as follows:

> It should be noted that U.S. Bank's supposed Trustee role is non-existent and unenforceable. The Plaintiff, having finally realized the motivations behind the misleading actions of Defendants, had legally obtained the right to preserve interest in her property through the filing **of Intent to Preserve an Interest in Real Property (California Civil Code 880.340)** with the County Recorder's Office on July 27, 2011 prior to the sale (County Recorder's document No. 20111002583).

*Id.* at 17:625-32 (emphasis in original). Plaintiff has provided the Court no reason to believe that filing a "notice of intent" pursuant to section 880.340 operates, in any way, to cancel a subject deed of trust. Therefore, this claim for relief, to the extent it is one, would be dismissed.

Defendants also direct arguments towards a perceived breach of contract claim. Although Plaintiff conclusorily asserts that the loan modification back-and-forth ripened into a contract with Chase, she (sensibly) has not included a claim for breach of contract in the FAC. The Court will not infer the existence of such a claim where the facts alleged

---

[6] As such, the Court would dismiss Plaintiff's free-standing "mail fraud" claim. *See Wilcox v. First Interstate Bank of Or., N.A.*, 815 F.2d 522, 533 n.1 (9th Cir. 1987) ("Other than in the context of RICO, federal appellate courts hold that there is no private right of action for mail fraud under 18 U.S.C. § 1341.").

5

do not appear to support it.

To the extent Plaintiff advances any theory based upon a belief that the refinanced loan dated March 25, 2006, is "void," and demands a determination "whether a legitimate loan actually existed," the Court agrees with Defendants – Plaintiff offers no reason to question whether she actually obtained funds as a result of that loan. She may not be heard at this stage to complain that the loan which she admittedly received was or is somehow void because it was issued in the name of a "non-existent bank." FAC at 13:484-15:540. There is zero indication that Plaintiff was in any way harmed or suffered damages as a result of this issue, even if the Court were to presume (which it does not) that it amounts to some manner of fraud.

Finally, in the FAC, Plaintiff alleges/argues that any TILA statute of limitations was tolled by virtue of the previously-summarized alleged fraudulent conduct. See FAC at 13:456-481. Yet, Plaintiff has not suggested what particular alleged TILA violation occurred on these facts. In proceedings held to consider a motion to dismiss Plaintiff's original Complaint in *this* action, the Court observed that there would be no basis for tolling any TILA claim based upon any failure to provide certain disclosures in connection with Plaintiff's acquisition of her loan. *See* Docket No. 11, at 2 (citing *See, e.g., Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1045 (9th Cir. 2011); *Meyer v. Ameriquest Mortg. Co.*, 342 F.3d 899, 902 (9th Cir. 2003). Plaintiff has given the Court no reason to think that her TILA claim is of any nature other than that type of TILA claim, and the fraudulent activity concerning Plaintiff's modification efforts would have had nothing to do with disclosures made at the time she originally obtained her loan. As such, there is no reason for the Court to conclude that Plaintiff has a viable TILA claim.

For the reasons set forth above, the Court would deny Defendants' motion with respect to Plaintiff's section 17200 claim and civil RICO claim. It would otherwise dismiss the FAC.