UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | CV 12-3511 FMO (AGRx) | Date | February 26, 2015 |
|---|---|---|---|
| Title | Mahin Oskoui v. JP Morgan Chase Bank, N.A., et al. | | |

| Present: The Honorable | Fernando M. Olguin, United States District Judge | |
|---|---|---|
| Vanessa Figueroa | None | None |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiff(s): | | Attorneys Present for Defendant(s): |
| None | | None |

**Proceedings:** **(In Chambers) Order Re: Pending Motion**

Having reviewed and considered all the briefing filed with respect to defendants JPMorgan Chase Bank, N.A. ("Chase") and U.S. Bank, National Association as Trustee, successor in interest to Bank of America, National Association as successor by merger to LaSalle Bank NA as Trustee for WaMu Pass-Through Certificates Series 2007-HY06 Trust's ("U.S. Bank as Trustee") (collectively, "defendants") Motion for Summary Judgment, or Alternatively Partial Summary Judgment ("Motion"), the court concludes that oral argument is not necessary and orders as follows. See Fed. R. Civ. P. 78; Willis v. Pac. Mar. Ass'n, 244 F.3d 675, 684 n. 2 (9th Cir. 2001).

**INTRODUCTION**

On March 22, 2012, plaintiff Mahin Oskoui ("plaintiff" or "Oskoui") filed a Complaint against defendants, asserting claims for (1) violation of the Truth in Lending Act, 15 U.S.C. §§ 1601, et seq.; (2) fraud; (3) violation of California's Business & Professions Code ("UCL"), §§ 17200, et seq.; (4) quiet title; and (5) estoppel. (See Notice of Removal ("NOR"), Exhibit ("Exh.") A (Complaint) at ¶¶ 23-55). Defendants removed the action to this court on April 23, 2012.[1] (See, generally, NOR). On June 21, 2012, the court granted defendants' motion to dismiss, and dismissed the Complaint with leave to amend certain claims.[2] (See Court's Order of June 21, 2012).

On August 10, 2012, plaintiff filed a First Amended Complaint ("FAC"), seemingly asserting claims for (1) violation of the UCL, (see FAC at 15; Court's Order of October 4, 2012, at 3); (2) violation of the Racketeer Influenced and Corrupt Organizations Act, ("RICO"), 18 U.S.C. §§ 1962,

---

[1] Plaintiff previously filed a state-court complaint against defendants, which after removal, the court dismissed with leave to amend. (See Court's Order of October 4, 2012, at 1). Rather than amend the complaint, plaintiff dismissed the action, and filed the instant action in state court. (See id.).

[2] Subsequent to the order dismissing the Complaint, the court granted plaintiff's request to proceed pro se. (See Court's Order of July 10, 2012).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-3511 FMO (AGRx) | Date | February 26, 2015 |
|---|---|---|---|
| Title | Mahin Oskoui v. JP Morgan Chase Bank, N.A., et al. | | |

et seq. (see FAC at 16; Court's Order of October 4, 2012, at 4-5); (3) mail fraud, 18 U.S.C. §§ 1341 & 1346, (see FAC at 16-17; Court's Order of October 4, 2012, at 5 n. 6); and (4) "Cancelled Deed of Trust is invalid and non-transferrable[.]" (See FAC at 17; Court's Order of October 4, 2012, at 5). On October 4, 2012, the court granted in part and denied in part defendants' Motion to Dismiss Plaintiff's First Amended Complaint. (See Court's Order of October 4, 2012). The court dismissed all claims with the exception of the UCL and RICO claims.[3] (See id. at 6).

**SUMMARY OF FACTS**[4]

---

[3] On January 18, 2013, the case was transferred from Judge Wu to the undersigned. (See Order of the Chief Judge of January 18, 2013). Plaintiff's improperly filed Second Amended Complaint ("SAC") was withdrawn, and the court denied plaintiff's untimely Request for Leave to Amend. (See Court's Order of February 5, 2013).

[4] Unless otherwise indicated, all facts set forth below are undisputed. Also, defendants request that the court take judicial notice of the following documents: (1) The Home Affordable Modification Program Guidelines ("HAMP Guidelines"), dated March 4, 2009, (Declaration of Bryant S. Delgadillo in Support of Defendants JPMorgan Chase Bank, N.A. and U.S. Bank as Trustee's 's [sic] Motion to [sic] for Summary Judgment, or in the Alternative, Partial Summary Judgment ("Delgadillo Decl.") at Exh. 4); (2) Assignment of Deed of Trust, recorded in the Los Angeles County Recorder's Office, as instrument number 20090419261 (id. at Exh. 6); (3) March 24, 2009, Notice of Default and Election to Sell Under Dead of Trust, recorded in the Los Angeles County Recorder's Office, as instrument number 20090419262 (id. at Exh. 7); (4) Notice of Trustee's Sale ("First NOTS"), recorded in the Los Angeles County Recorder's Office, as instrument number 20091747122 (id. at Exh. 8); (5) October 27, 2010, Notice of Trustee's Sale ("Second NOTS"), recorded with the Los Angeles County Recorder's Office, as instrument number 20101538399 (id. at Exh. 9); (6) May 4, 2011, Notice of Trustee's Sale ("Third NOTS"), recorded with the Los Angeles County Recorder's Office, as instrument number 20110637663 (id. at Exh. 10); and (7) Trustee's Deed Upon Sale, recorded with the Los Angeles County Recorder's Office, as instrument number 20111349621. (Id. at Exh. 11). Pursuant to Federal Rule of Evidence 201, a court may take judicial notice of a fact not subject to "reasonable dispute," if it is "generally known within the trial court's territorial jurisdiction" or it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The court will take judicial notice of the subject documents identified above. See Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n. 6 (9th Cir. 2006) (court "may take judicial notice of filings and other matters of public record"); Molina v. Wash. Mut. Bank, 2010 WL 431439, *3 (S.D. Cal. 2010) (taking judicial notice of information on government agency websites); Dunfee v. Truman Capital Advisors, LP, 2013 WL 1285152, *2 n. 2 (S.D. Cal. 2013) (taking judicial notice of deed of trust, notice of default, notice of trustee's sale, and a trustee's deed upon sale); Velasquez v. Countrywide Home Loans, Inc., 2012 WL 2368285, *2 (N.D. Cal. 2012) (same); Gomez v. Wells Fargo Home Mortg., 2011 WL 5834949, *1 n. 2 (N.D. Cal. 2011) (same).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-3511 FMO (AGRx) | Date | **February 26, 2015** |
|---|---|---|---|
| Title | **Mahin Oskoui v. JP Morgan Chase Bank, N.A., et al.** | | |

I.      THE LOAN.

On March 27, 2007, Oskoui obtained a refinance loan from Washington Mutual Bank, FA ("WaMu"). (See Declaration of Montoya McGruder in Support of Defendants' Motion for Summary Judgment ("McGruder Decl.") at ¶ 5 & Exh. 1 ("Note")).  The loan was secured by a Deed of Trust ("DOT") recorded against Oskoui's residence located on South La Jolla Avenue in Los Angeles, California (the "Property").  (See id., ¶ 6 & Exh. 2 (DOT) at 2-4[5]).  California Reconveyance Company ("CRC") was named as the Trustee.  (See DOT at 3).

In 2007, WaMu Asset Acceptance Corp. deposited the loan in the WaMu Mortgage Pass-Through Certificates Series 2007-HY6 Trust ("Trust") pursuant to a Pooling and Servicing Agreement ("2007 PSA").  (See McGruder Decl. at ¶ 7 & Exh. 3 (2007 PSA); Delgadillo Decl., Exh. 5 (Chase's Responses to Plaintiff's First Set of Interrogatories) at 8 (response to Interrogatory No. 5)).  Oskoui's loan is identified as one of the loans transferred to the Trust.  (See 2007 PSA, at Exh. D) (redacted Mortgage Loan Schedule).  LaSalle Bank National Association ("LsSalle") was named as the Trustee of the Trust, and WaMu was named the Servicer of the loan pursuant to the 2007 PSA.  (See 2007 PSA at Cover Page & Execution Page).

On April 22, 2007, Bank of America Corporation, of which Bank of America, National Association ("BANA") is a subsidiary, purchased ABN AMRO North America Holding Company from ABN AMRO Bank N.V. pursuant to a Purchase and Sale Agreement.  (See McGruder Decl., ¶ 8 & Exh. 4 (Purchase and Sale Agreement by and between ABN AMRO Bank N.V. and Bank of America Corporation) ("LaSalle PSA")).  LaSalle was a National Bank Subsidiary of ABN AMRO North American Holding Company.  (See LaSalle PSA at 5).  As a result, BANA became the successor-by-merger to LaSalle and acquired LaSalle's rights and obligations as Trustee of the Trust.

Pursuant to a Purchase and Assumption Agreement ("P&A Agreement"), dated September 25, 2008, the FDIC-Receiver transferred to Chase "all right, title, and interest of the Receiver in and to all of the assets" of WaMu.  (See McGruder Decl., ¶ 9 & Exh. 6 (P&A Agreement) at § 3.1). Accordingly, Chase acquired the servicing rights to the loan.  (See id. at § 2.1).

On March 24, 2009, CRC, as the named trustee under the DOT, recorded a Notice of Default and Election to Sell Under Deed of Trust ("NOD") against the property.  (See Delgadillo Decl. at ¶ 8 & Exh. 7 (NOD)).  The NOD reflects a default in an amount of $22,764.00.  (See NOD at 2).[6]

---

[5] Citations to the DOT refer to the handwritten numbers on the upper-right hand corner.

[6] Page references to this exhibit reflect the handwritten numbers on the upper right-hand corner.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 12-3511 FMO (AGRx)** | Date | **February 26, 2015** |
|---|---|---|---|
| Title | **Mahin Oskoui v. JP Morgan Chase Bank, N.A., et al.** | | |

II.     PLAINTIFF'S DEFAULT AND LOAN MODIFICATION HISTORY.

     A.     First Loan Modification Application.

Oskoui first missed a payment on her loan in November 2008. (See McGruder Decl., ¶ 10 & Exh. 7 at 786).[7] In or about January 2009, Oskoui applied for a loan modification. (See id., ¶ 11 & Exh. 22 (Loss Mitigation Process Notes) ("LMTN") at 1; Declaration of Mahin Oskoui in Support of Opposition to Defendants [sic] Request for Summary Judgment ("Oskoui Decl.") at ¶ 3).

On May 21, 2009, Chase, still acting under WaMu's name, sent Oskoui a letter approving Oskoui for a trial payment agreement ("First Trial Payment Plan"). (See McGruder Decl. at ¶ 12 & Exh. 9 (May 21, 2009, Letter)). The First Trial Payment Plan required three trial payments of $3,280.05, beginning on July 1, 2009.[8] (See May 21, 2009, Letter at 3). The May 21, 2009, Letter stated that, "[i]f all payments are made as scheduled, we will reevaluate your application for assistance and determine if we are able to offer you a permanent workout solution to bring your loan current." (Id.). Oskoui accepted the First Trial Payment Plan on June 1, 2009. (See id.).

Under guidelines established by the U.S. Department of Treasury to determine whether a borrower is eligible for a loan modification under HAMP, the unpaid principal balance of the loan, prior to capitalization, must not be greater than $729,750 for a one unit property. (See HAMP Guidelines at 2-3). Moreover, the net present value ("NPV") of the modified loan should be compared to the NPV of the unmodified loan. (See id. at 5). The HAMP Guidelines set out a sequence of steps for evaluating a hypothetical loan modification that would lower an eligible borrower's loan payment to no greater than 31% of the borrower's gross monthly income. (See id. at 5-7). The purpose of applying these steps is to fashion a hypothetical modified loan that the servicer can use to determine whether it is more profitable for the holder of the loan to modify the

---

    [7] Page references to this exhibit are to the ECF-generated page number.

    [8] Defendants, relying on the HAMP Guidelines, state that "Chase determined the monthly payment amount for the First [Trial Payment Plan] by calculating 31% of the approximately $10,575 that Plaintiff initially disclosed to Chase as her monthly income." (See Motion at 4, citing Delgadillo Decl., ¶ 5 & Exh. 4 (HAMP Guidelines) at 1). The HAMP Guidelines, however, do not support this contention since there is no evidence that Chase actually utilized them in connection with Oskoui's loan modification requests. (See, generally, McGruder Decl.). The court notes that in other instances, defendants simply fail to cite to any evidence in support of their factual assertions. For example, defendants state that after Oskoui "made the three required payments under the First [Trial Payment Plan], Chase evaluated Plaintiff's Loan modification application under [HAMP] and the Chase Modification Program ('CHAMP')[,]" but fail to cite to any evidence. (See, generally, Motion at 4). The court will not consider unsupported facts in deciding the instant Motion.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-3511 FMO (AGRx) | Date | February 26, 2015 |
|---|---|---|---|
| Title | Mahin Oskoui v. JP Morgan Chase Bank, N.A., et al. | | |

loan or allow the loan to go into foreclosure. ("NPV Test"). (Id. at 5 ("Th[e] NPV Test will compare the [NPV] of cash flows expected from a modification to the [NPV] of cash flows expected in the absence of a modification. If the NPV of the modification scenario is greater, the NPV result is deemed positive."); id. at 6 ("If the NPV Test generates a positive result . . . the servicer is required to offer a Home Affordable Modification to the borrower. If the NPV Test generates a negative result, modification is optional, unless prohibited under contract.")).

Chase's loan modification analysis summary and recommendation concerning Oskoui's completed loan modification application ("MOD Summary"), dated November 10, 2009, indicates that Chase determined that the loan was not eligible for a HAMP modification because the unpaid principal balance was more than $833,000, (see McGruder Decl. at ¶ 13 & Exh. 10 (MOD Summary)), higher than the HAMP Guidelines for a one-unit property. (See HAMP Guidelines at 2-3). The MOD Summary also reflects that Oskoui was not eligible for a CHAMP modification because the loan did not pass the NPV Test and Oskoui's income was insufficient since her debt-to-income ratio was 42.29%, well over the 31% limit. (See Mod Summary at 3) ("denied - income insufficient and did not pass npv calc test"); (see also id. at 2).

On November 10, 2009, Chase sent Oskoui a letter denying her loan modification application due to insufficient income. (See McGruder Decl. at ¶ 14 & Exh. 11 (November 10, 2009, Letter); Oskoui Decl. at ¶ 7; Opp. at Exh. 7 (same)). The letter stated, in part, that, "[a]fter researching your account, we have determined that you do not qualify for a modification under the [Making Home Affordable ("MHA")] program and or Chase Modification Program (CMP) at this time[.]" (November 10, 2009, Letter at 1).

On November 19, 2009, CRC recorded a Notice of Trustee's Sale against the Property. (See Delgadillo Decl., Exh. 8).

B. Second Loan Modification Application.

Oskoui submitted a second loan modification application in January 2010. (See McGruder Decl., ¶ 15 & LMTN at 2; Oskoui Decl. at ¶ 8).

On March 1, 2010, Chase sent Oskoui a letter offering her a trial payment plan ("Second Trial Payment Plan"), which Oskoui accepted. (See McGruder Decl. at ¶ 16 & Exh.13 (March 1, 2010, Letter); Oskoui Decl. at ¶ 9; Opp. at Exh. 8 (same)). The Second Trial Payment Plan required three trial payments of $2,988.49, beginning on April 1, 2010. (See March 1, 2010, Letter at 2). The March 1, 2010, Letter stated that "[a]fter successful completion of the Trial Period Plan, Chase will send you a Modification Agreement for your signature which will modify the Loan as necessary to reflect this new payment amount."[9] (Id. at 1). However, it also stated that "[i]f all

---

[9] According to the letter, the payment amount of the modified loan would not necessarily be the same as the amount of the trial payments. Rather, Chase "reserve[d] the right to determine

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-3511 FMO (AGRx) | Date | February 26, 2015 |
|---|---|---|---|
| Title | Mahin Oskoui v. JP Morgan Chase Bank, N.A., et al. | | |

payments are made as scheduled, we will consider a permanent workout solution for your Loan." (Id. at 2).

The next day, March 2, 2010, Chase sent Oskoui a letter denying her application for a HAMP modification because the unpaid principal balance of the loan exceeded the HAMP Guidelines of $729,750 for one unit properties. (See McGruder Decl., ¶ 17 & Exh. 14 (March 2, 2010, Letter) at 1 ("We are unable to offer you a Home Affordable Modification because the current unpaid principal balance on your Loan is higher than the program limit.")). The letter also stated that Oskoui "may be eligible for other modification programs offered by Chase." (Id.).

Oskoui subsequently received another letter from Chase, dated August 16, 2010, again informing Oskoui that her loan did not qualify for an MHA modification because the unpaid principal balance on the loan exceeded the MHA limit. (See Opp. at 7 & Exh. 11 (August 16, 2010, Letter at 1); Oskoui Decl. at ¶ 11). The letter also advised Oskoui that she "may be eligible for other modification programs offered by Chase." (August 16, 2010, Letter at 1). The letter informed Oskoui that she had 30 days within which to contact Chase to discuss the reason for denial "or to discuss alternative loss mitigation options that may be available to [her]." (Id.). Finally, the letter cautioned plaintiff that her "loan may be referred to foreclosure during this time, or any pending foreclosure action may continue. However, no foreclosure sale w[ould] be conducted and [she would] not lose [her] home during this thirty (30) day period." (Id.).

On October 27, 2010, a Notice of Trustee's Sale was recorded with the Los Angeles County Recorder's Office. (See Delgadillo Decl. at Exh. 9 (Second NOTS)).

Despite the August 16, 2010, letter which denied plaintiff's application for an MHA modification, Chase sent plaintiff yet another letter, dated November 1, 2010, confirming receipt of her loan modification request under MHA, and provided the general requirements for qualification, including documentation of income.[10] (See Opp. at 7 & Exh. 16 (November 1, 2010, Letter)). A couple of days later in a letter dated November 3, 2010, Chase requested

---

the final amounts of the unpaid interest and any other delinquent amounts (except late charges) to be added to [the] loan balance in order to determine a new payment amount." (March 1, 2010, Letter at 1).

[10] Oskoui references an October 27, 2010, letter from "Chase denying Modification," (see Oskoui Decl. at ¶ 12); however, because she did not attach the letter, the court will not consider it in connection with the Motion. See School Dist. No. 1J, Multnomah County v. ACandS, Inc., 5 F.3d 1255, 1262 (9th Cir. 1993) ("[A]n affidavit of a witness is not exempt from Rule 56(e)'s attachment requirement simply because the affidavit references documentary evidence and personal knowledge as a source of information. If documentary evidence is cited as a source of factual contention, Rule 56(e) requires attachment. There was no attachment. The district court did not abuse its discretion in excluding the . . . affidavit.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-3511 FMO (AGRx) | Date | **February 26, 2015** |
|---|---|---|---|
| Title | **Mahin Oskoui v. JP Morgan Chase Bank, N.A., et al.** | | |

documentation from Oskoui relating to her loan modification request.[11] (See McGruder Decl. at ¶ 18 & Exh. 15 (November 3, 2010, Letter)). The November 3, 2010, Letter requested (1) "[t]wo (2) most recent pay stubs indicating year-to-date earnings[;]" (2) "[t]wo (2) most recent months' consecutive complete bank statements[;]" (3) "[p]roof of payment for most recent property taxes including tax bill showing amount due[;]" (4) "[p]roof of payment of homeowner/property insurance including homeowner insurance declaration page showing amount due[;]" and (5) "[p]roof of payment of homeowner's association fees[.]"[12] (November 3, 2010, Letter at 1).

On November 15, 2010, Oskoui provided Chase with (1) pay stubs for the weeks of April 18, 2010, July 11, 2010, July 26, 2010, August 2, 2010, August 9, 2010, August 16, 2010, and August 23, 2010.[13] (See Oskoui Depo. at 162-171 & November 15, 2010, Fax). Oskoui, however, failed to provide the remaining required documents, including recent pay stubs and bank statements.[14] (See id.).

On December 10, 2010, Chase again requested updated documentation from Oskoui, (see McGruder Decl. at ¶ 19 & Exh. 16 (December 10, 2010, Letter)), and informed her that Chase still needed "[t]wo (2) most recent pay stubs, indicating year-to-date earnings [and t]wo (2) most recent months' consecutive complete bank statements[.]" (Id. at 1). The December 10, 2010, Letter warned Oskoui that if the requested documents were not received "within fifteen (15) days of the date of th[e] letter, [Chase would] assume that [Oskoui] ha[d] withdrawn [her] request for a modification and [would] cancel [her] application without further notice." (Id.) (emphasis omitted). The letter alerted Oskoui that Chase "could resume other means to collect amounts due on [the] account." (Id.). Oskoui again failed to provide the requested documents. (See Oskoui Depo. at 171-72) (testifying that she "decided to withdraw because they were just playing game [sic] with me" and that she did not respond to the December 10, 2010 request).

---

[11] Defendants state that following the March 2, 2010 Letter, Chase regularly requested financial documents from Oskoui to support her loan modification application, and that "[a]t no point after Plaintiff completed the Second [Trial Payment Plan] were all of Plaintiff's supporting documents less than 90 days old." (See Motion at 6-7). Defendants, however, provide no evidentiary support for these asserted facts. (See, generally, id.).

[12] The November 3, 2010, Letter referred to MHA rather than CHAMP. (See November 3, 2010, Letter).

[13] Although the Motion and Defendants' Statement of Uncontroverted Facts and Conclusions of Law state that Oskoui provided these documents on November 5, 2010, the supporting evidence shows they were submitted to Chase on November 15, 2010. (See Delgadillo Decl., Exh. 12 (Deposition of Mahin Oskoui) ("Oskoui Depo.") at 162-171 & Exh. 13 (Exh. 57 to Oskoui Depo.) ("November 15, 2010, Fax")).

[14] Oskoui admitted during her deposition that she had no income for the month of October and November 2010. (See Oskoui Depo. at 168 & 172).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-3511 FMO (AGRx) | Date | **February 26, 2015** |
|---|---|---|---|
| Title | **Mahin Oskoui v. JP Morgan Chase Bank, N.A., et al.** | | |

On January 4, 2011, Chase sent Oskoui a letter denying her loan modification application because she failed to provide all requested documents. (See McGruder Decl. at ¶ 20 & Exh. 23 (January 4, 2011, Letter)). The letter stated: "We are unable to offer you a modification through the federal Home Affordable Modification Program (HAMP) or any Chase modification programs . . . because you did not provide us with the documents we requested." (January 4, 2011, Letter at 1).

On May 4, 2011, CRC recorded a third Notice of Trustee's Sale, (see Delgadillo Decl. at ¶ 11 & Exh. 10 (Third NOTS)), and the Property was sold on September 28, 2011, via a credit-bid of $978,017.20, to U.S. Bank as Trustee. (See Delgadillo Decl. at ¶ 12 & Exh. 11 (Trustee's Deed Upon Sale)). The Trustee's Deed Upon Sale was recorded on October 5, 2011. (Id.).

## LEGAL STANDARD

Rule 56(a) of the Federal Rules of Civil Procedure[15] authorizes the granting of summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The standard for granting a motion for summary judgment is essentially the same as for granting a directed verdict. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2511 (1986). Judgment must be entered "if, under the governing law, there can be but one reasonable conclusion as to the verdict." Id.

The moving party has the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each cause of action upon which the moving party seeks judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553 (1986). If the moving party fails to carry its initial burden of production, "the nonmoving party has no obligation to produce anything." Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc., 210 F.3d 1099, 1103 (9th Cir. 2000). However, "[w]here the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010); see Celotex, 477 U.S. at 325, 106 S.Ct. at 2554 (clarifying that "the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case.").

If the moving party has sustained its burden, the burden then shifts to the nonmovant to identify specific facts, drawn from materials in the file, that demonstrate that there is a dispute as to material facts on the elements that the moving party has contested. Celotex, 477 U.S. at 324, 106 S.Ct. at 2553; Anderson, 477 U.S. at 256, 106 S.Ct. at 2514 (A party opposing a properly supported motion for summary judgment "must set forth specific facts showing that there is a

---

[15] All further Rule references are to the Federal Rules of Civil Procedure.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-3511 FMO (AGRx) | Date | February 26, 2015 |
|---|---|---|---|
| Title | Mahin Oskoui v. JP Morgan Chase Bank, N.A., et al. | | |

genuine issue for trial.").[16] A factual dispute is material only if it affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth. SEC v. Seaboard Corp., 677 F.2d 1301, 1305-06 (9th Cir. 1982). Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322, 106 S.Ct. at 2552; see also Anderson, 477 U.S. at 252, 106 S.Ct. at 2512 (parties bear the same substantive burden of proof as would apply at a trial on the merits).

In determining whether a triable issue of material fact exists, the evidence must be considered in the light most favorable to the nonmoving party. Barlow v. Ground, 943 F.2d 1132, 1134 (9th Cir. 1991), cert. denied, 505 U.S. 1206, 112 S.Ct. 2995 (1992). However, summary judgment cannot be avoided by relying solely on "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888, 110 S.Ct. 3177, 3188 (1990); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986) (more than a "metaphysical doubt" is required to establish a genuine issue of material fact). "The mere existence of a scintilla of evidence in support of the plaintiff's position" is insufficient to survive summary judgment; "there must be evidence on which the [fact finder] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252, 106 S.Ct. at 2512. Moreover, it is not the court's task "to scour the record in search of a genuine issue of triable fact." Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996) (internal quotation marks omitted). Rather, the nonmoving party must "identify with reasonable particularity the evidence that precludes summary judgment." Id. (internal quotation marks omitted).

**DISCUSSION**

I.  RICO CLAIM.

Defendants contend that summary judgment should be granted in their favor on the RICO claim because Oskoui has failed to establish a predicate act or a pattern of racketeering activity, and has failed to show the existence of a RICO enterprise. (See Motion at 10-14).

RICO makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate . . . in the conduct of such enterprise's affairs through a pattern of racketeering activity[.]" 18 U.S.C. § 1962(c). RICO creates a private right of action that permits "[a]ny person injured in his business or property by reason of a violation" of its substantive provisions to recover

---

[16] "In determining any motion for summary judgment or partial summary judgment, the Court may assume that the material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the 'Statement of Genuine Disputes' and (b) controverted by declaration or other written evidence filed in opposition to the motion." Local Rule 56-3.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-3511 FMO (AGRx) | Date | February 26, 2015 |
|---|---|---|---|
| Title | Mahin Oskoui v. JP Morgan Chase Bank, N.A., et al. | | |

civil remedies. 18 U.S.C. § 1964(c). A civil RICO plaintiff asserting a § 1962(c) claim has the burden of proving "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as predicate acts) (5) causing injury to plaintiff's business or property." Living Designs, Inc. v. E.I. Dupont de Nemours and Co., 431 F.3d 353, 361 (9th Cir. 2005), cert. denied, 547 U.S. 1192 (2006) (internal quotation marks omitted); see also Odom v. Microsoft Corp., 486 F.3d 541, 547 (9th Cir.) (en banc), cert. denied, 552 U.S. 985 (2007) (internal quotations and citation omitted). "RICO is to be read broadly[,]" Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 497, 105 S.Ct. 3275, 3285 (1985), and "liberally construed to effectuate its remedial purposes[.]" Id. at 473 U.S. at 498, 105 S.Ct. at 3286.

"'[R]acketeering activity' is any act indictable under several provisions of Title 18 of the United States Code, and includes the predicate acts of mail fraud [and] wire fraud[.]" Turner v. Cook, 362 F.3d 1219, 1229 (9th Cir.), cert. denied, 543 U.S. 987 (2004). A "'pattern of racketeering activity' requires at least two acts of racketeering activity[.]" 18 U.S.C. § 1961(5). "[W]hile two predicate acts are required . . . they are not necessarily sufficient." Turner, 362 F.3d at 1229. "A pattern of racketeering activity also requires proof that the racketeering predicates are related and that they amount to or pose a threat of continued criminal activity." (Id.) (internal quotation marks omitted).

A RICO "enterprise" is defined to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). "[A]n associated-in-fact enterprise is 'a group of persons associated together for a common purpose of engaging in a course of conduct.'" Odom, 486 F.3d at 552 (quoting United States v. Turkette, 452 U.S. 576, 583, 101 S.Ct. 2524, 2528 (1981)). Moreover, an association-in-fact enterprise must have a structure with "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." Boyle v. U.S., 556 U.S. 938, 946, 129 S.Ct. 2237, 2244 (2009); Negrete v. Allianz Life Ins. Co. of North America, 926 F.Supp.2d 1143, 1148 (C.D. Cal. 2013) (same). In order to establish an associated-in-fact enterprise, "a plaintiff must provide both 'evidence of an ongoing organization[,]' and 'evidence that the various associates function as a continuing unit.'" Odom, 486 F.3d at 552 (quoting Turkette, 452 U.S. at 583, 101 S.Ct. at 2528).

Here, Oskoui has completely failed to proffer any evidence demonstrating the existence of an "enterprise" and instead merely purports to set forth the law regarding RICO. (See, generally, Opp. at 12-13; Plaintiff's Declaration to Motion to Submit a Sur-Reply to Defedants' [sic] Opposition to Plaintoff's [sic] Suplmental [sic] Brief in Oposition [sic] to Defendaht's [sic] Request for S.J. Previously Filed on January 17,2014 [sic] at 8-9). Oskoui's failure to identify any facts regarding the existence of a RICO enterprise is fatal to her RICO claim and compels the court to grant summary judgment in defendants' favor on that claim. See Keenan, 951 F.3d at 1279 (nonmoving party must "identify with reasonable particularity the evidence that precludes summary judgment" as it is not the court's duty "to scour the record in search of a genuine issue of triable fact."); S.A. Empresa De Viacao Aerea Rio Grandense (Varig Airlines) v. Walter Kidde & Co., 690 F.2d 1235, 1238 (9th Cir. 1982) ("a party cannot manufacture a genuine issue of material fact

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-3511 FMO (AGRx) | Date | February 26, 2015 |
|---|---|---|---|
| Title | Mahin Oskoui v. JP Morgan Chase Bank, N.A., et al. | | |

merely by making assertions in its legal memoranda"); Surrell v. Cal. Water Serv. Co., 518 F.3d 1097, 1103 (9th Cir. 2008) ("Conclusory statements without factual support are insufficient to defeat a motion for summary judgment."). Thus, because Oskoui has failed to demonstrate that there is a genuine issue of material fact as to the RICO claim, the court grants defendants' Motion as to the RICO claim.[17]

II.     UCL CLAIM.

Plaintiff's remaining cause of action alleges a violation of the UCL. (See FAC at 15). The UCL prohibits "unfair competition," broadly defined as "any unlawful, unfair or fraudulent business act or practice[.]" Cal. Bus. & Prof. Code § 17200; Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co., 20 Cal.4th 163, 180 (1999). Since the UCL is written in the disjunctive, "[e]ach prong of the UCL is a separate and distinct theory of liability[, with each] offer[ing] an independent basis for relief." Kearns v. Ford Motor Co., 567 F.3d 1120, 1127 (9th Cir. 2009). "By proscribing 'any unlawful' business practice, section 17200 'borrows' [the] violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." Cel-Tech., 20 Cal.4th at 180 (internal quotation marks omitted).

The UCL does not define the term "unfair" business act or practice, see, generally, Cal. Bus. & Prof. Code §§ 17200, et seq., and following the Cel-Tech decision, the definition of "unfair" conduct in consumer cases "is currently in flux." See Lozano v. AT&T Wireless Services, Inc., 504 F.3d 718, 735 (9th Cir. 2007); Davis v. HSBC Bank Nevada, N.A., 691 F.3d. 1152, 1169 (9th Cir. 2012). Since Cel-Tech, the California Courts of Appeal have applied three different tests in consumer UCL cases. Similar to the standard used in direct competitor cases, the first test "requires that the public policy which is a predicate to a consumer [UCL action] be tethered to specific constitutional, statutory, or regulatory provisions."[18] See Drum v. San Fernando Valley Bar Ass'n, 182 Cal.App.4th 247, 257 (2010) (internal quotation marks omitted). The second test

---

[17] Also, because Oskoui has failed to proffer any evidence creating a genuine issue of material fact as to the enterprise element of her RICO claim, the court does not need to address defendants' remaining contentions regarding the RICO claim. See, e.g., Garcia v. American Home Mortgage Servicing Inc., 2011 WL 6141047, *8 n. 5 (N.D. Cal. 2011) (declining to address alternative arguments on motion to dismiss RICO claim).

[18] In direct competitor cases, the Supreme Court of California defined "unfair conduct" under the UCL as "conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." Cel-Tech, 20 Cal.4th at 187. The court, however, left open the question whether this test applied in consumer cases. See id. at 187 n.12 (admonishing that the test for unfair conduct does not necessarily "relate[] to actions by consumers or by competitors alleging other kinds of violations of the [UCL] such as 'fraudulent' or 'unlawful' business practices").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-3511 FMO (AGRx) | Date | February 26, 2015 |
|---|---|---|---|
| Title | Mahin Oskoui v. JP Morgan Chase Bank, N.A., et al. | | |

looks at "whether the alleged business practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers and requires the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim."[19] Id. (internal quotation marks omitted). The third test requires that "(1) the consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably have avoided." Id. (internal quotation marks omitted).

With respect to the fraudulent prong of the UCL, fraudulent "does not refer to the common law tort of fraud[.]" Puentes v. Wells Fargo Home Mortgage, Inc., 160 Cal.App.4th 638, 645 (2008). Instead, "[a] business practice is fraudulent under the UCL if members of the public are likely to be deceived." Davis, 691 F.3d at 1169.

As noted earlier, there is no dispute that Oskoui did not provide all the requested documentation to support her loan modification request. (See Oskoui Depo. at 168 & 172) (admitting that she did not send all requested documents, in part, because she was not employed). Given that plaintiff has failed to put forth any evidence that she was denied a loan modification for an improper reason, the court finds that plaintiff has failed to raise a genuine issue of material fact as to the UCL claim.[20] See, e.g., Benson v. Ocwen Loan Servicing, LLC, 2014 WL 962022, *2 (9th Cir. 2014) ("[Plaintiff] has failed to adduce any evidence that [the loan servicer] denied his loan modification for an improper reason, and thus a UCL claim based on this theory cannot survive summary judgment.").

Accordingly, the court will grant summary judgment in defendants' favor on the UCL claim as well.

**This Order is not intended for publication. Nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

Based on the foregoing, IT IS ORDERED THAT defendants JPMorgan Chase Bank, N.A. and U.S. Bank, National Association as Trustee, successor in interest to Bank of America,

---

[19] The Cel-Tech court explained that prior definitions of "unfair" were "too amorphous and provide[d] too little guidance to courts and businesses." 20 Cal.4th at 185. Previous definitions included conduct that "offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers" or conduct found to be unfair after a court "weigh[ed] the utility of the defendant's conduct against the gravity of the harm of the alleged victim." Id. at 184. (internal quotation marks and citations omitted).

[20] Moreover, given the court's finding regarding the RICO claim, and Oskoui's failure to proffer any evidence regarding other unlawful conduct on the part of defendants, the UCL claim fails as to the unlawful prong as well.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | CV 12-3511 FMO (AGRx) | Date | February 26, 2015 |
|---|---|---|---|
| Title | Mahin Oskoui v. JP Morgan Chase Bank, N.A., et al. | | |

National Association as successor by merger to LaSalle Bank NA as Trustee for WaMu Pass-Through Certificates Series 2007-HY06 Trust's Motion for Summary Judgment, or Alternatively Partial Summary Judgment **(Document No. 48)** is **granted**. Judgment shall be entered accordingly.

|  |  | 00 | : | 00 |
|---|---|---|---|---|
|  | Initials of Preparer | | vdr | |